2823 Minnesota United States versus Kelvin Baez. Mr. Zayed, can you turn your camera on? There you go. Can you hear me? I can. And Mr. Cheever? Yes, I hope you can hear me as well. Yes, we can. All right. Mr. Zayed, would you please proceed? Thank you, Your Honor. May it please the court, counsel, Mr. Cheever. Good morning, Your Honors. R.J. Zayed on behalf of Kelvin Baez. With me is Caitlin Hall, who assisted me in the briefing and tried the case with me. There's three issues that I'd like to highlight for the court in our discussion today. The first issue is that there was no probable cause for the arrest at the hotel room. And then as a result of the no probable cause for the arrest, the statement that was given at the police station less than 24 hours later while he was in isolation is the fruit of the poisonous tree. And then I also want to discuss the fact that the search of the safe in the Equinox and the use, it was a locked safe, and the use of the papers and effects that belonged to Mr. Baez against him violated his Fourth Amendment rights to be secure in those papers and effects. Because the search warrant that was used did not have probable cause as to him. And therefore, it was an unlawful search and seizure. With respect to the first point, Your Honors, the key for your analysis and consideration is the facts of that hotel room. In that hotel room, Your Honors, the front room is kind of like a living room. There's a couch, there's a chair, there's a coffee table, there's an end table, there's a sink in the back, and there's another sink area like a water bar there. Then there is a long hall. Then you go down this hall, and at the end of the hall, it opens up into the bedroom. When you open the door of the embassy suite, you look down the hall, you see the foot of the bed. When you get to the bedroom, the foot of the bed, it's a king-sized bed. The head goes to your left, and if you look to your left of the bed, there's two end tables. A critical component is that at the end table in the bedroom in the far corner was a cell phone that was acting as a surveillance camera that was on live, that was videotaping everything that was going on in that room and feeding it outside the room. On the other side of the bed was an armoire. This armoire had cables, and it was wrapped up in cables, and it was padlocked and chained. All the evidence that the government seized, in this case the police officers, was found in that back bedroom. Because when you walk in into the bedroom, you have the bed in front of you, you turn left, you see the head of the bed. Next to the head of the bed is a garbage can. Counsel, that's not true with respect to the probable cause to arrest. What about what was on the table in plain view next to where your client was sitting in the common area? That was a bubble pipe which the officer testified as to that bubble pipe. That was not an arrestable offense. That was a misdemeanor. That's on the record, a citation on the record that he could not arrest him for that bubble pipe. That doesn't mean it was irrelevant as the probable cause. No, but there was no reason that he could arrest him based on that bubble pipe. The point that I'm trying to get at is, Your Honor, everything incriminating is in the back room. If you look in the garbage can in the back room, that's where you have the empty plastic. Furthermore, Your Honor, next in the back room where the head of the bed is, there is a sink in the back room. The police officer, there's a panel under the sink. It doesn't open up like a cabinet. He had to physically remove that panel. Once he removed that panel, there he found a pillowcase. In that pillowcase, he found about 10 pounds of meth wrapped up in blue plastic packaging similar to what was in the garbage can. Everything was found in the back room. My argument is simply this, that the fact that Mr. Baez was present in the front room next to a bubble pipe that didn't have, that had residue in it, does not justify a warrantless arrest. Didn't your client also respond to a question from one of the officers about where would I find the drugs? And he said, in the armoire? Yes, Your Honor, the question was when the officer had already done the search, looked and saw that the armoire had a cable, a bicycle cable padlock, the officer said, if there are drugs here, where are they? Mr. Baez responded sarcastically, in the armoire, obviously. That was the statement. Okay, so anybody walking in there would say, hmm, where would drugs be? Well, that armoire over there is chained and padlocked. The point I want to make is that the court relied on common enterprise interest with respect to this. It cited the Supreme Court case in Maryland versus Pringle and a few others that says, if you have three individuals in a car and there's drugs in the council, all there is, you can infer a common enterprise. You cannot infer a common enterprise here because of the armoire. Counsel, this is Judge Smith. What about the contents of the backpack that included, I believe, some ammunition? Yes, Your Honor. First of all, Mr. Baez was sitting on the couch. He did not consent to any search. His wife, Zyra Guilvino, she said, yes, go ahead, search. It was her backpack. That's undisputed. It was her backpack. When they opened her backpack, what did they find? They found an Equinox manual. Importantly, they found a speeding ticket for the license plate of that Equinox in her name. They also found four bullets that were like in a plastic baggie, and they also found some men's clothing. But there was nothing in there other than men's clothing that suggested that maybe Mr. Baez had something to do with the backpack. That backpack was not his. It was hers. Counsel, let me jump to what it seems to me is the bottom line here, and that is that your argument in the main brief completely ignored the independent source doctrine, and in your reply brief, you assert that that independent source doctrine would not attribute hotel room evidence to Mr. Baez with no relevant site. So what's your authority for that assertion that the independent source doctrine doesn't fall on whoever it's incriminated? The independent source doctrine does not apply. We did raise it when we appealed. We appealed orders number one. Wait, excuse me. I asked you for authority. You just reasserted what's in your reply brief without authority, so I asked you for your authority. Here's the amendment, Your Honor. It's an unreasonable search and seizure. Come on. Come on. Come on. I asked you for... What's your best case for that assertion? My best cases are contained in the... It's the dope in the trunk of a car that is not accessible to the passenger of the car. That's my best case, number one. Number two, the search warrant lacked probable cause as to Mr. Baez. The only... What the court said about the independent source has to do with the search warrant. I specifically raised the issue of suppression of that search warrant. It was document 53. The court denied suppression of the search warrant. I argued it lacked probable cause because it violated the fourth amendment. I specifically raised the independent source doctrine saying that was an illegal search. And then there is no doubt that the safe belonged to Baez. There was no doubt that it was locked. There was no doubt that they opened it. There was no doubt that they used the papers and effects found in them and used them against him even though the search warrant totally lacked probable cause. So that's one argument. The second argument is the back room was no different than a locked car because the back room had surveillance and video. He didn't have dominion or control or possession of the back room. So therefore, he didn't... The back room, the fact that they found things under the sink behind a panel and he has no dominion control or possession interest on it and he has no common enterprise interest, that cannot be used against him. With respect to the independent source, the search warrant lacked probable cause as to Mr. Baez. The only way he's connected to this drug trafficking enterprise is in the stuff that they found in the safe in Equinox, which was pursuant to a search warrant that was absolutely devoid as to probable cause with respect to Mr. Baez. I'm sorry, Chief. I was just going to ask, wouldn't he have access to the items in the bathroom? The testimony was that he'd been staying there for a couple of days. It wouldn't seem rational that he would have a bed in the living room on the couch but not have access to the bathroom. The reason for that, Your Honor, is because of the surveillance camera that was doing a live feed from the corner. Well, the surveillance camera is not going to keep the natural body from... natural bodily functions from requiring to be satisfied. But Your Honor, the bathroom was not in the bedroom. The bathroom was in the hall leading to the bathroom. There was absolutely no reason whatsoever for him to go into the bedroom. The bathroom is right outside the living room on the right-hand side. In the bedroom, there's a sink in the bedroom. He did not have to go into the bedroom. And in fact, the government found nothing with his name on it in the back bedroom. And when they opened up the armoire with the search warrant, nothing in the armoire belonged to Mr. Baez. And Mr. Baez was acquitted of everything found in that house under the sink in the armoire as well. So with that, unless Your Honors have further questions, I reserve my time. Mr. Tyatt, you keep asserting that the search warrant had to have probable cause with respect to Mr. Baez. What case says that? Because as I understand it, a search warrant issues based on probable cause that contraband or evidence of a crime can be found in a particular location. So what case stands for the proposition that there has to be probable cause as to a particular person? The cases that I would rely upon, Your Honor, to answer your question, I have not found any cases on Dunport. I'm relying on the Fourth Amendment itself that indicates that a person is to be secure in its papers in effects from unlawful searches and seizures. The Fourth Amendment was drafted because of the all-written cases that were happening in the founders that general warrants don't count. And there was a series of cases where the British would go in, I have a general warrant, let me look around to see where I can find a crime. And so they particularized it. The Fourth Amendment requires a particular showing that you, in order for them to trespass onto your own properties and your own papers and effects, in order for them to use that against, they have to have something that you are involved in really. I'm going back to the Fourth Amendment and the plain meaning of the Fourth Amendment, Your Honor. Thank you, Your Honor. Thank you, Mr. Zayed. Mr. Cheever. Thank you, Your Honor. May it please the court. I'm Mike Cheever. I represent the government in this case. I also handle... Mr. Cheever, is your camera on? It is. I see myself. Okay. I don't see him. I can see him. Well, proceed. I can hear you well. Certainly. Thank you, Your Honor. I want to address the innocent intent defense just because I know it wasn't addressed by Mr. Zayed, but that's an area that has some confusion in the Eleventh Circuit. And I just want to make sure that's shored up correctly, if that's all right. It's... There's nothing special about the innocent intent defense. It's a trial tactic. It's an argument that the government didn't meet its burden. It doesn't require notice to the government. It doesn't have any effect on the elements of the offense. It's like some other defense where you get a theory of defense instruction, but the instruction cannot be inconsistent with the innocent intent is one that I think the court should use with caution. It's misleading. It's a pro-defense label if it's put into a jury instruction. The label is misleading because it's really an innocent motive defense. An innocent intent defense is like the public officer or cooperating defendant has actual government authority to deal drugs. They buy drugs. They sell drugs. They join a conspiracy to sell drugs, but their intent to do those things is innocent because they have authority. That's different from what the court and other courts have called the... Well, this court in the Eleventh Circuit have called the innocent intent defense. It's what the Second Circuit calls the negation of intent defense. I call it, at least in this case, innocent motive defense, and the motive doesn't matter. It doesn't matter if you are selling drugs because you want money, selling drugs because you get drugs for your habits, selling drugs because you love your spouse who's dealing drugs, selling drugs for revenge, selling drugs for vigilantism. You don't have to have the same motive to join a conspiracy. You have to intend to join a conspiracy to sell drugs. That's true for the substantive count as well. It doesn't matter what your motive is as long as you're knowingly selling drugs. That's an innocent motive defense. It's not one that entitles the defendant to a complete defense. His argument that I'm a vigilante, that's good enough, is not good enough. That's a jury nullification defense. Mr. Zayed brought out from his own client on cross the fact that he was, in fact, dealing drugs and doing it over a long period of time. As to the arguments raised, I want to address first one point. It may have been handled by Mr. Zayed about the bathroom. There was no evidence of any significance found in the bathroom. It was separate from the back bedroom. But there was plenty of probable cause if you even get to it. I like if the court rules on waiver or independent source doctrine. Which bathroom now? I've heard we've heard about two bathrooms this morning. You just said the bathroom. No, I think Mr. Zayed and I are saying the same thing. There's only one bathroom. Where was the sink? I thought the sink was beyond the bedroom. There were three sinks. There was one in the front room, there was one in the bathroom, and there was one in the back bedroom. So it's the sink in the back bedroom where drugs were found, not the sink in the bathroom or the sink in the front room. It's confusing, I understand. But to the extent, the probable cause is overwhelming. It's an odd argument to make in my mind. Both because of the point one of the judges made that for the search warrant, it doesn't have to be defendant specific. And I've cited cases in my brief that to that effect, or at least one case, because that's really all you need. It happens all the time that you go in on a warrant for looking for stuff for one person and you find it incriminates another, and then you can use that evidence. That shouldn't be in dispute. But as to waiver, we can avoid... You say the probable cause was overwhelming, but then you don't state what it is or what supports it. Give us a brief statement of what the evidence was supporting probable cause. Certainly, Your Honor. Judge Loken hit on something significant, which is the methamphetamine pipe. Mr. Zaid says, well, that wasn't enough for an arrest. The officer testified to that. The officer was testifying to Minnesota state law, not federal law. Federal law controls and the methamphetamine pipe by itself would have given probable cause. We argued that in the page 12 of our response. I think it's document number 156. But there's so much more. There was a... He completely ignores the stop of the load car, and that evidence is relevant to the arrest of Mr. Zaid's client. The officer, because he's doing well, stops a load car. The driver flew in. Somebody else drove the load car. They know it's a load car because it smells of gasoline, and it's full of dryer sheets, and the thing comes apart for the compartments, and there's a receipt for a $20,000 deposit, and there's $4,000 cash, and there's three badges and two DEA. There's somebody else involved. Somebody else drove the car. Somebody else uses the second badge if they have to. They go to the hotel where this person is staying, and they find Mr. Zaid's client and his wife, and they go into the back. They see that they're smoking methamphetamine. They go in the back room and see wrappers for methamphetamine. They have a dog hit on the armoire for drugs. They have a dog hit on the Equinox for drugs. Mr. Zaid just said in his wife, in Baez's wife's purse was the manual for the Equinox and a speeding ticket for driving the Equinox sitting on the couch next to Mr. Zaid's client. The dog sniff of the Equinox alone is probable cause to believe that Mr. Zaid's client and his client's wife were involved in the drug trafficking. I can go on, but I just think it's absurd. There's overwhelming probable cause, Your Honor. I can't remember if there was another question I wanted to address. Yeah, I left out Judge Grunder's point that the defendant said that meth would be in the armoire, obviously. They were smoking methamphetamine. As to the point that, I wanted to just finish on my point about waiver. If the court rules on waiver, I know it's easier to reach the meat of the issue and it's what lawyers do. It's what judges tend to do when they read something. They want to figure it out. But if the court rules on waiver, I think it's absurd arguments such as those raised in Mr. Baez's brief. Unless you have other questions, I'm going to rest on my brief for the rest. I don't see any other questions. Mr. Zaid, your rebuttal. Yes, thank you, Your Honor. You have three minutes and five seconds. Thank you, Your Honor. The load car, the stop of the load car was illegal, the court found. The load car was not in Baez's name. Baez was never mentioned in the load car. The government had nothing on Baez before opening the door into the hotel. The dog hit on the armoire happened after Mr. Baez was taken to jail and arrested. The dog hit on the Equinox happened after Mr. Baez was taken away to jail and arrested. The independent source doctrine does not apply here because the search warrant wasn't valid. I'm relying on an invalid search warrant of the safe in the Equinox. That's the only evidence the government has against Mr. Baez. Counsel, why doesn't our decision in En Guaido the reason it doesn't is because what the court found in that case, irrespective of the search in the illegal search in the back bedroom behind the panel in the sink there, that the officers would have gone and obtained a search warrant. Anyway, the search warrant they would have obtained only has nothing on Mr. Baez. He was in the front room sitting next to the meth pipe. There was a backpack that had men's clothing that had bullets in it. The question is what would have been uncovered with that warrant search? Again, what would have been uncovered is the same thing that I'm arguing with. The thing that would have been uncovered was the stuff in the safe. The paper and the facts that are in that safe were illegally seized by the government. A search warrant does not save that. Now I'm confused. What warrant search was illegal? My argument is that the search warrant allowed the government to search the back bedroom, the entire hotel room, and the equinox. When they searched the equinox, in the back of the equinox, they found a safe. The safe was locked. The safe was locked. At the time they opened the safe, their probable cause for the search warrant had nothing on Mr. Baez. My argument is that they needed something. They could open that safe surely and they could use it against En Guaido. There's no issue about that because he has no standing and they had legitimate probable cause to go after him. But to use those papers and the facts against Mr. Baez on a search warrant has no probable cause. As to him, that's improper. That's unreasonable. And that violates the explicit language of the Fourth Amendment. And I think that's all I have, Your Honor. Thank you for listening. Thank you, Mr. Zia. And thank you also, Mr. Chief. The court appreciates both counsel's argument to us this morning based on the briefing that you've submitted. We'll take the case under advisement and render decisions promptly as possible. Chief, if I could just make a comment. Mr. Zia, you caused me about 30 minutes of time by not citing En Guaido decision in your main brief. And I was reading these facts and I said I know these facts, but there was no way to discover it. And so I had to read them all again. It was very frustrating. My apologies, Your Honor. Well, I understand why you didn't want particularly to go there, but it would have helped in your background to point out our prior involvement in this whole episode. My apologies to the court, Your Honor. I certainly did not intend to waste your time. I understand. This is just a point of information. Will do, Your Honor. In previous encounters, the court, you know, would say, I would say something like, Mr. Judge Loken, as you ruled in this other case. And I get the sense that the court did not want to hear me acknowledge that. So I apologize, Your Honor. I'm truly sorry. Thank you, Mr. Zia. Thank you also, Mr. Cheever. Council may be excused.